UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) |
| Plaintiff, | ) |
| v. | ) CV-12-RRA-1722-S |
| PH LOUNGE LLC, et al., | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

This is a civil action filed by the plaintiff, J & J Sports Productions, Inc., against the defendants PH Lounge, LLC and Antonio Fikes, Jr. The complaint alleges that the defendants unlawfully rebroadcast a television program, licensed by the plaintiff, without the plaintiff's permission. It alleges a violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 (Count I), a violation of the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553 (Count II), and state law conversion (Count III).

The case comes before the court on the defendants' motion "to dismiss for failure to state a claim, subject matter jurisdiction, lack of personal jurisdiction, lack of standing, failure to mitigate damages, waiver & estoppel, and failure to prosecute." (Doc. 11.)

MOTION TO DISMISS FOR FAILURE TO PROSECUTE

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a district court to dismiss a complaint sua sponte for failure to prosecute or failure to comply with a court order or the federal rules. Jones v. Commonwealth Land Title Ins. Co., 459 F. App'x 808, 811 (11th Cir.

2012) cert. dismissed, 133 S. Ct. 35, 183 L. Ed. 2d 671 (U.S. 2012).[1] "The decision to dismiss for want of prosecution lies within the trial court's discretion and can be reversed only for an abuse of discretion. Nevertheless, the severe sanction of dismissal should be imposed "only in the face of a clear record of delay or contumacious conduct by the plaintiff." Martin-Trigona v. Morris, 627 F.2d 680, 682 (5th Cir. 1980) (internal citations omitted).[2]

The defendants cite nothing which would constitute "delay or contumacious conduct by the plaintiff." The defendants first state that although the complaint was filed on April 30, 2012, "[p]laintiff didn't serve [d]efendants until July 26, 2012." (Doc. 11, p. 2.) Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the plaintiff had at least 120 days from the filing of the complaint to serve the defendants. Fed. R. Civ. P. 4(m). There was no delay.

The defendants next argue that the delay in having the Rule 26 planning meeting authorizes a dismissal. The court notes that <u>both</u> parties were directed to conduct the meeting and file a report. (Docs. 8, 9.) All parties agree that plaintiff's counsel attempted to confer with defense counsel on December 17, 2012, the date on which the report was due. (Doc. 11, p. 2; doc. 10, p. 1.) The defendants argue that this timing was too late to conduct a meeting. However, there is no evidence in the record to suggest that the <u>defendants</u> attempted a meeting any earlier. Dismissal would seem to be inappropriate as it appears all parties bear responsibility for the meeting not occurring sooner. Further, only the plaintiff

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2. The case is cited for its statement of the law only.

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

attempted to have the meeting at all.  The defendants have cited no authority where a case has been dismissed under similar circumstances for failure to prosecute.

<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

<u>Standard</u>

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court, in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), established that a complaint should not be dismissed unless it appeared beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court criticized  the "no set of facts" standard, stating that it could be construed so narrowly and literally that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Id. at 561. The Twombly court introduced the concept of plausibility as the test for granting or denying a motion to dismiss for failure to state a claim. "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555. Justice Souter stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. at 555.

The court further explained. The plausibility standard is not a probability requirement, but it "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. Id. at 556. The claim for relief must be "plausible on its face." Id. at 570. The court denied that it required "heightened fact pleading of specifics," but stated that if plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. After removing the legal conclusions from the pleadings, courts should weigh the remaining factual allegations and determine if they are sufficient to render the plaintiff's claim plausible. Also, the court may infer "obvious alternative explanations" which constitute lawful conduct. Id. at 567.

In the later case of Ashcroft v. Iqbal, 556 U.S. 662 (2009), the court restated the plausibility standard, and held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.' " Id. at 1950. The Eleventh Circuit set out Iqbal's holding:

> Applying these principles to Iqbal's complaint, the Court began by disregarding as wholly conclusory Iqbal's allegations that Mueller was "instrumental" in adopting the detention policy and Ashcroft was the "principal architect" of the policy, and that they willfully agreed to subject Iqbal to harsh treatment for a discriminatory purpose. Id. at 1951. The Court then determined that the remaining factual allegations — that Mueller and Ashcroft approved the FBI's policy of arresting and detaining thousands of Arab Muslim men as part of its investigation into the events of September 11 — did not plausibly establish the purposeful, invidious discrimination that Iqbal asked the Court to infer. Id. at 1951-52. The alternative inferences that could be drawn from the facts — namely, that the arrests were likely lawful and justified by a nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts-were at least equally compelling. Id. Accordingly, the Court ruled that Iqbal's complaint must be dismissed. Id. at 1954.

American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288-1290 (11th Cir. 2010).

Although the heightened pleading analysis was explicitly rejected, Twombly, 550 U.S. at 569 n. 14, it certainly is clear that Twombly and Iqbal intended to make it more difficult for a plaintiff to withstand a motion to dismiss by requiring more of him at the pleading stage.

## Allegations in the Complaint

J & J Sports Productions, Inc. was granted the exclusive nationwide commercial television distribution rights to the Floyd Mayweather, Jr. v. Shane Mosley Welterweight Championship Fight Program, telecast nationwide on May 1, 2010 (hereinafter the "Program"). (Doc. 1, p. 2.) Its distribution rights encompassed all undercard events as well as the main event. (Doc. 1, p. 2.) Pursuant to the contract granting the plaintiff distribution rights, the plaintiff entered into sub-licensing agreements with various commercial establishments to permit the public exhibition of the Program to patrons within their establishments. (Doc. 1, p. 3.) The plaintiff alleges that, without its authorization, the defendants unlawfully intercepted and exhibited the Program at their commercial establishment in Birmingham, Alabama. (Doc. 1, p. 3.)

## Analysis

### Denials of Specific Allegations

The defendants argument is difficult to understand. Grammatically, their brief contains several sentence fragments, run-on sentences, and unintelligible sentences. For example, they state, "Explained further is that Plaintiff through out (sic) its complaint had

pleadings which border on the possibility and plausibility." (Doc. 11, p. 4.) The court does not know what this means.

> The motion refers to the complaint only in the following discussion:
>
> For example, Plaintiff alleges that Defendants Antonio Files, Jr. and PH Lounge LLC and its servants, workers, employees . . . . etal (sic) did unlawfully publish, divulge and exhibit "Program" at the time of its transmission at their Birmingham location namely 930 5th Ave Birmingham, AL in which Antionio (sic) Fikes nor PH Lounge LLC had dominion and control at the time thus defeating any allegation of commercial advantage or private financial gain if one so existed.

(Doc. 11, p. 4.) Again, it is unclear exactly what the defendants mean to say. It is possible that the defendants are arguing that they did not engage in the conduct described in the complaint since they later state:

> Prior to Antonio Fikes, Jr. And PH Lounge, LLC there were 3 or more tenants doing business under the same name and who continued to do business under that name until Mr. Fikes took possession on August 6, 2010 after obtaining his state liquor license and after the filing of his Articles of Organization on May 14, 2010.

(Doc. 11, pp. 4-5.) Such is not an argument that the complaint fails to state a claim. It is a denial. Similarly, the defendants also claim that the conversion claim should fail because "the plaintiff has failed to prove that the elements of conversion exist" and because they deny that they committed the acts stated in the complaint. (Doc. 11, p. 6.)

Of course, the plaintiff has to prove nothing at this stage, and a denial does not establish a failure to state a claim. "[W]here there are well-pleaded factual allegations, [the court must] 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). The complaint states that the defendants engaged in the conduct alleged. The court must assume at this stage that the allegation is true. Further, as the defendants' own motion notes, "matters outside [a] pleading should not be

considered when granting a motion for failure to state a claim." (Doc. 11, p. 3.)[3]  As pled, the complaint states a claim for which relief may be granted.[4]

## Statute of Limitations Defense

The defendants also argue, without citation to authority, that the federal claims are barred by the applicable statute of limitations. (Doc. 12, p. 7.) They then abandon this defense for a few pages and raise it again later in their brief, arguing that the limitations period is <u>one year</u>, and cite Directtv, Inc. v. Webb, 545 F. 3d 837 (9th Cir. 2008).[5] In fact there is <u>no</u> limitations period in either 47 U.S.C. § 605 or 47 U.S.C. 553. As has been noted,

> When Congress fails to supply a statute of limitations for a federal cause of action, the courts "have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law." United Paperworks Int'l Local # 395 v. ITT Rayonier, Inc., 931 F.2d 832, 834 (11th Cir.1991) (quoting Reed v. United Transp. Union, 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989)). The Supreme Court has made it clear that state statutes are the "lender of first resort" and this practice is "longstanding" and "settled." North Star Steel Co. v. Thomas, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995). "Since 1830, 'state statutes have repeatedly supplied the periods of limitations for federal causes of action' when federal legislation made no provision.' " Id. at 33–34, 115 S.Ct. 1927 (quoting Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 703–04, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966)). Moreover, it is appropriate and realistic to presume that Congress was familiar with this precedent and expected its enactments to be interpreted in conformity with it. North Star Steel, 515 U.S. at 34, 115 S.Ct. 1927.

---

[3]The allegations that the defendants were not responsible are unsupported by any evidence or by citation to the record. Accordingly, if this were a motion for summary judgment, the defendants still would not be entitled to relief.

[4]The defendants assert in one phrase, without argument, that "the complaint should be dismissed for lack of personal jurisdiction." (Doc. 11, p. 5.) The court finds this "argument" to be meritless.

[5]This argument is made by the defendants in the section of their brief discussing subject matter jurisdiction. The court does not see how a statute of limitations argument goes to subject matter jurisdiction, so it is discussed under the Rule 12(b)(6) portion of the recommendation.

DirecTV, Inc. v. Wright, 350 F. Supp. 2d 1048, 1051 (N.D. Ga. 2004).  In Webb, the court held that because 47 U.S.C. § 605

> does not have its own limitations period, the district court properly looked first to analogous state law. The district court determined that the California Piracy Act was "most closely analogous" to § 605 and that policy factors did not support adopting something else. Consequently, the district court applied the one-year statute of limitations applicable to violations of the Piracy Act to DTV's claims under § 605.

Webb, 545 F.3d at 847-48.  Accordingly, Webb stands only for the proposition that the one-year statute of limitations was appropriate in that case, brought in California.  The defendants also argue that "the statute of limitations for 47 U.S.C. §§605 and 553 claims in Georgia is four years." (Doc. 12, p. 8.)  But it is unclear why the defendants think Georgia's statute of limitations applies in this case.

While the court has been unable to find a case which has decided what the applicable statute is in Alabama, there is no need to decide the issue.  "Dismissal under Federal Rule of Civil Procedure 12(b)(6) "on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 (11th Cir. 2005).  From the face of the complaint it does not appear that the claims are time-barred.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

It is clear that the court has federal question jurisdiction over the federal claims in counts one and two.  28 U.S.C. § 1331.  The court would then have supplemental jurisdiction over the state law conversion claim in count three, which is based upon the same events.  28 U.S.C. § 1367.

Still, the defendants argue: "Albeit the question of licensee and exclusivity may or may not be an issue; it was alleged. The issue surrounding standing deepens into the alleged infringement." (Doc. 11, p. 6.) These sentences are not understood.

Next, the defendants argue that "he is absent from liability because he is not the interested party." (Doc. 11, p. 6.)[6] Again, this is not a subject matter jurisdiction argument, but is instead a denial.

The defendants also claim that the court lacks standing, apparently as an element of subject matter jurisdiction. The Supreme Court has noted:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, see id., at 756, 104 S.Ct., at 3327; Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); Sierra Club v. Morton, 405 U.S. 727, 740-741, n. 16, 92 S.Ct. 1361, 1368-1369, n. 16, 31 L.Ed.2d 636 (1972);[1] and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " Whitmore, supra, 495 U.S., at 155, 110 S.Ct., at 1723 (quoting Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Simon v. Eastern Ky. Welfare *561 Rights Organization, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Id., at 38, 43, 96 S.Ct., at 1924, 1926.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

In this case the allegations in the complaint make out a plausible claim that the plaintiff owns the rights to the Program and that the defendants unlawfully broadcast the program

---

[6]Although it is not explained, apparently, "he" is defendant Fikes.

9

without the plaintiff's consent.  Further, an award of damages in this case will redress the plaintiff's injuries.  The defendants argue that the plaintiff has "failed to show that Antonio Fikes, Jr. and PH Lounge LLC had a causal nexus" because the plaintiff "cannot show where the [d]efendants . . . exercised any dominion and control." (Doc. 11, p. 7.)  Again, this is a denial. The plaintiff has alleged that the rebroadcast occurred and that the defendants were the ones who rebroadcast the Program.  That is all that is required at this stage.  Likewise, the defendants' statements that they "deny" these claims do not make the complaint insufficient.  (Doc. 11, pp. 7-9, 10, 11.)[7]

RECOMMENDATION

Based on the foregoing it is RECOMMENDED that the motion to dismiss be DENIED.  Any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all

---

[7]As a "throw in" argument, the defendants, in one paragraph, without citation to authority, argue that the plaintiff "waived any rights asserted in the Complaint . . . by the doctrines of waiver, estoppel, and/or release."  This argument is without merit.  Likewise, the argument that the plaintiff is not entitled to punitive damages, because of the Eighth Amendment, and the due process clause of the Fourteenth Amendment, presented without authority in one paragraph of the brief, is without merit.  (Doc. 11, p. 10.)

other parties to the action. If objections are filed, the opposing party has ten (10) additional days to file a response to the objections.

DONE this 13th day of May, 2013.

*/s/ Robert R. Armstrong*
Robert R. Armstrong, Jr.
United States Magistrate Judge